In the first of these cases the plaintiff brought suit on a note for $24,798.65, executed and delivered to her on 11 September, 1923, by Belk-Williams Company, Inc., payable ninety days after date, and endorsed by W. H. Belk. Prior to the maturity of the note the Belk-Williams Company received a notice from Adolph Rosenmann forbidding payment to the plaintiff on the ground that the note was a part of the partnership assets of M. Rosenmann Sons, of which Adolph Rosenmann was a partner, and on the further ground that the plaintiff claimed the note as a gift from M. Rosenmann, who was mentally incapacitated. The Belk-Williams Company was notified that if it made payment to the plaintiff, Adolph Rosenmann would hold the company responsible for *Page 495 
any loss or damage he might thereby sustain; and thereupon the company paid to the clerk of the Superior Court the full amount due on the note and was discharged, together with W. H. Belk, from further responsibility. Adolph Rosenmann and William Rosenmann, individually and as guardians of M. Rosenmann, were then made parties and permitted to file an answer. In their answer they allege that the partnership of M. Rosenmann Sons sold to the Belk-Williams Company its stock of goods at the price of $54,798.68, a part of which was represented by the note sued on; that M. Rosenmann attempted to give the plaintiff the note she claims but did not deliver it to her prior to the time of his commitment to a sanitarium, but retained possession of it and collected and used the interest until the plaintiff came into possession of the several notes and began to collect the interest thereon; that M. Rosenmann had no authority to make the gift; and that the pretended gift was without consideration and of no effect. They pray that the notes and the proceeds therefrom be declared the property of the partnership and the alleged gift void.
To this answer the plaintiff filed a reply and cross-complaint alleging that the notes executed by the Belk-Williams Company were first made payable to M. Rosenmann and that all these, including the note sued on had been renewed many times in her name and given her as a part of M. Rosenmann's estate and that she was the actual owner thereof. She alleged also that the notes executed by the Bladenboro Cotton Mills had been renewed by her from time to time.
In the second case the plaintiff filed a petition before the clerk of the Superior Court in which she alleged that M. Rosenmann, her husband, had been adjudged insane and had been committed to a hospital in Mamaroneck, N.Y.; that up to 31 July, 1924, she had received $300 a month for her support and maintenance; that she had to stay near her husband at great expense, and that her income was insufficient; and that for several months she had not received her monthly allowance. She filed her petition under C.S., 2294, for the purpose of having a part of her husband's estate sold for her maintenance.
Adolph Rosenmann, guardian, and William Rosenmann filed separate answers to the petition; Adolph denying the material allegations and pleading substantially the same defense set up in the first action, and specifically alleging that a part of the money paid by the Belk-Williams Company had been loaned to the Bladenboro Cotton Mills, and that the plaintiff had no interest in the notes given for the loan. The answer of William Rosenmann admits practically all the allegations of the plaintiff.
The clerk made no order but transferred the case to the Superior Court docket; and it appearing that the matters in controversy in the *Page 496 
first case were in controversy in the second and that the issues were the same in each, the court made an order consolidating the two causes.
The following verdict was returned:
1. Is the plaintiff the owner of the proceeds of the Belk-Williams Mills notes now in the hands of the Murchison National Bank? Answer: No.
2. Is the plaintiff the owner of the proceeds of the Bladenboro Cotton Mills notes now in the hands of the Murchison National Bank? Answer: No.
Judgment on the verdict, and appeal by the plaintiff. No error.
The only question litigated on the trial and involved in the appeal is the title or ownership of five promissory notes aggregating $54,798.65. Two of these notes, each in the sum of ten thousand dollars, payable to the order of the plaintiff, were executed by the Bladenboro Cotton Mills, Inc., on 23 November, 1922, and 21 February, 1923, respectively. Of the remaining notes one in the sum of $24,798.65 and two, each in the sum of $5,000, payable to the plaintiff, were executed by the Belk-Williams Company, Inc., respectively on 11 September, 1923, and on 10 and 12 December, 1923. The plaintiff alleges that she is the owner and entitled to the possession of these notes or to such amount paid thereon as may be subject to the order of the court.
Adolph Rosenmann, one of the defendants, answered the complaint and the petition, alleging that in 1918 the partnership of M. Rosenmann Son (composed of M. Rosenmann, Adolph Rosenmann, and William Rosenmann) sold to the Belk-Williams Company their stock of goods and received in part payment of the purchase price notes of the Belk-Williams Company amounting to $54,798.65; that the sum of $20,000 was paid and afterwards loaned to the Bladenboro Cotton Mills; that the notes were first made to the partnership or to M. Rosenmann for the benefit of the partnership; that M. Rosenmann without authority of the other partners afterwards caused the notes in controversy to be made payable to the plaintiff; that he is now insane; and that Adolph Rosenmann and William Rosenmann are his guardians. Given this outline, the contentions of the parties and special phases of the evidence will be considered in connection with the exceptions.
We see no error in the order consolidating the two cases. In Hartman v.Spiers, 87 N.C. 28, it was held to be improper to consolidate causes which are essentially different or causes in which the parties are not the same; but in the present case the pleadings show and the order states that the questions raised in the first suit are substantially the *Page 497 
same as those presented in the second. That this conclusion is correct and that the consolidation was not improper may be seen by reference to the issues that were submitted to the jury. Henderson v. Forrest, 184 N.C. 230;Wilder v. Greene, 172 N.C. 94; Von Glahn v. De Rossett, 76 N.C. 292.
The plaintiff called as a witness Isaac B. Grainger, vice-president of the Murchison National Bank, who testified that the bank, previously appointed trustee of the Rosenmann estate, received the notes in question from the plaintiff on 27 March, 1925. For the purpose of showing how she had obtained possession of the notes the defendants proved by the cross-examination of this witness that he received them from M. Rosenmann on 19 February, 1923, and delivered them to Adolph Rosenmann as guardian of M. Rosenmann about two months later, the defendants contending that Adolph Rosenmann wrongfully turned them over to the plaintiff, who had not theretofore had them in her possession. The witness was permitted to read a list of securities attached to a receipt given by the bank, or by the witness as trustee, to M. Rosenmann in February, 1921; a list of securities deposited with the bank by M. Rosenmann on 19 February, 1923; and a list of securities set forth in a receipt given the bank by Adolph Rosenmann, as guardian, on 14 April, 1923. The plaintiff objected to the reading by the witness of the lists of the securities for the several reasons assigned in her brief.
Of course it is elementary that the party alleging a fact must ordinarily prove it by the best evidence and that a written instrument is the best evidence of its contents. Also, while a witness must usually speak from his recollection, he may refer to a paper, entry, or other written instrument in order to refresh his memory. But it is important to note that neither the plaintiff's cause of action nor the defense thereto is based upon the contents of the papers referred to in the cross-examination. The issues were addressed to the ownership of the notes which the plaintiff produced at the trial; and the object of the cross-examination was to show that they had never been delivered to the plaintiff by her husband, but by his guardian, and that they were in fact a part of her husband's estate. The substance of the testimony was that M. Rosenmann had deposited the securities with the bank and had taken a receipt therefore in the first instance; that among the securities held by the bank in February, 1923, were the notes in controversy, which, on 14 April, 1923, the bank delivered to the guardian. The point in controversy was the title or ownership of the notes and, necessarily, the question of delivery; not primarily the contents of the several papers. There was no dispute as to the genuineness of the receipts and the mere fact that the securities were identified by the witness is not ground for a new trial. *Page 498 
The plaintiff excepted to the instruction that as to each issue she was required to establish the truth of her contentions by the greater weight of the evidence. She relies in part on the provision that "where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proven" (C.S., 2997); and she contends that by producing and offering the notes in evidence she made out a prima facie case which placed on the defendants the burden of disproving her title. If it be granted that she made out a prima facie case in this way, the burden of disproving her ownership of the notes did not devolve upon the defendant. There was no controversy between the plaintiff and the makers of the notes — no question as to the liability of the parties "whose signature appeared thereon," but a dispute between the plaintiff, who claimed the notes as a gift from her husband and the defendants, his children, who denied her title. The question was, not the liability of the makers, but the plaintiff's ownership. The asserted gift of the notes by the husband to the wife involved both an intent to transfer the title and an act designed to effectuate the intent. Having alleged the gift, the plaintiff had the burden of making good her allegation. The principle has been applied in a number of recent decisions and need not be repeated here. Hunt v. Eure,189 N.C. 483 and cases cited.
Exceptions were taken by the plaintiff to the court's denial of these requested instructions: (1) that the execution and renewal of the notes to the plaintiff as payee raised the presumption of a gift from her husband; (2) that if the jury should find from the evidence that her husband deposited in the bank her shares of stock in certain corporations, certificates, deposit book, etc., and with these articles the notes in suit, payable to her, there was a presumption that he delivered the notes to the bank for her benefit. Neither exception can be sustained. A gift of personal property is a unilateral act. It imports, not only an intention to give, but an actual or constructive delivery of the property; for the donor's present relinquishment of dominion over the thing given is essential to a valid gift. Personal property cannot be delivered and retained at the same time. Whether the notes in controversy were retained or delivered was a question for the jury to determine upon the testimony of the witnesses. The plaintiff never had the actual possession of the notes prior to her husband's affliction, and herein her case is distinguishable from Swindell v. Swindell, 153 N.C. 22, Arrington v. Arrington,114 N.C. 116, and similar decisions. As to the alleged symbolical delivery of the notes the evidence was submitted to the jury under proper instructions. Kelly v. Maness, 123 N.C. 236; Newman v. Bost, 122 N.C. 524;Paschal v. Hall, 58 N.C. 108. *Page 499 
Assignments 12, 19, 20 relates to other prayers. The first of them is defective in that it assumes a fact or facts not in evidence or in dispute and draws therefrom conclusions which do not necessarily follow. The second prayer was given in substance, perhaps more favorably than the plaintiff requested; and the third is subject to the objection that it sets forth the evidence recited as establishing constructive delivery of the notes, thereby withholding from the jury the question of intent as a fact and treating it as an inference of law. As to principles which the plaintiff intended to present, see Handley v. Warren, 185 N.C. 95; Thomas v.Houston, 181 N.C. 91; Parker v. Mott, 181 N.C. 435.
His Honor declined the following instruction which is the subject of the 15th assignment of error: "That the notes being on their face made expressly payable to the plaintiff by Belk-Williams and the Bladenboro Cotton Mills makes the notes irrevocable and the said M. Rosenmann had no right thereafter to change the payee, it being different from a case where the note is transferred or assigned by the payee to another, in which case the retention of the note by the payee puts it in his power to cancel the assignment or transfer, which he could not do in this instance, Mrs. Hannah Rosenmann deriving her title from the maker instead of from her husband."
It will be observed that this prayer is based on the propositions that the notes were irrevocable and that the plaintiff derived her title to them from the makers and not from her husband. The notes have been paid and the proceeds are subject to the final judgment of the court; so there is no possibility of a revocation by the makers. And as to the title the plaintiff alleges that the notes, first in her husband's name, were afterwards made payable to her, and that he caused the change to be made because he intended them as a gift to his wife. It was upon this theory that the issues were prepared and the case was tried — the theory of a controversy between the plaintiff and her husband's successors as to the ownership of the notes; and this, as we have said and as the parties recognized during the trial, presented primarily the question of a delivery of the notes by the husband to the wife. Under these conditions the instruction was properly denied.
The instructions referred to in assignments 13 and 21, we think, are sufficiently incorporated in the charge; for in his recital of the contentions of the parties his Honor presented as evidence all the circumstances set out in these prayers and correctly instructed the jury in reference to them. In our opinion the refusal to give the two remaining prayers (assignments 22, 23) is not good cause for a new trial.
We find
No error. *Page 500