GERTRUDE BULLUCK v. HERBERT LONG.

(Filed 28 March, 1962.)

**1. Trial § 33—**

Even though the parties waive a recapitulation of the evidence, the court is under duty to declare and explain the law in its relation to the various aspects of the evidence and to point out, respectively, for each side the facts presented by his evidence which would justify an affirmative and would justify a negative answer to the issue in controversy.

**2. Automobiles § 46—**

A charge on the question of whether defendant was exceeding the speed which was reasonable and prudent under the circumstances then existing which merely gives the contentions of plaintiff as to what facts would constitute excessive speed under the circumstances and defendant's contentions that other facts would not, without appropriate instructions to the jury as to what facts, if found by the jury, would or would not amount to negligence in this respect, and failing to charge that a violation of the provisions of G.S. 20-141(a) (c) would constitute negligence *per se, is held* insufficient.

**3. Same—**

A charge on the question of sudden emergency which states the doctrine and defendant's contentions in respect thereto and that he was entitled to the benefit thereof, but which fails to give contentions of plaintiff with respect to this doctrine and which fails to declare and explain the law arising on the evidence in respect thereto, is insufficient.

**4. Trial § 33—**

G.S. 1-180 places a mandatory duty upon the trial court to declare and explain the law arising on every substantial feature of the case, and a bare declaration of the law in general terms with a statement of the respective contentions of the parties, is insufficient, and failure of the court to comply with the requirements of the statute is prejudicial.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Bundy, J.,* November 1961 Civil Term of EDGECOMBE.

Civil action to recover damages for personal injuries.

This is a summary of the relevant allegations of fact of the complaint:

N. C. Highway 43 runs in an easterly direction from Rocky Mount to Pinetops, and about two miles east of the city limits of Rocky Mount it has a sharp curve. It was raining on the night of 3 October 1960, and the road was slick. On that night a Studebaker automobile of plaintiff's husband was parked on the south shoulder of the highway facing in a westerly direction toward Rocky Mount. Plaintiff under the direction of her husband drove a Mercury automobile on the

south shoulder of the highway flush with the rear bumper of her husband's automobile to push it off and get it started. When plaintiff's husband was preparing to get in the Studebaker for the plaintiff to begin pushing it off with the Mercury, a tractor-trailer was approaching on the highway from the east and the defendant driving a Chevrolet automobile on the highway was approaching from the west coming around the curve in the rain at a speed of about 55 miles an hour. When defendant's automobile was about 150 yards away, plaintiff's husband went to the front of the Studebaker and began waving a railroad signal light. Defendant drove his automobile off the highway and onto the south shoulder thereof, crashing into the front of the Studebaker, and knocking it back into the Mercury in which plaintiff was sitting. As a result of which plaintiff was painfully injured.

Defendant was negligent in four respects, which proximately caused plaintiff's injuries: One, he drove his automobile on a highway at a speed greater than was reasonable under the existing circumstances, in violation of G.S. 20-141(a). Two, he drove his automobile at an excessive rate of speed on a rainy night without keeping a proper lookout. Three, he failed to remain on the hard-surfaced highway, but pulled off onto the dirt shoulder, when he saw, or in the exercise of reasonable care he should have seen, the two automobiles on the shoulder of the highway and the signal light on the shoulder. Four, he failed to put on his brakes and reduce his speed to avoid striking plaintiff after he saw or should have seen the warning signal light, or if he applied his brakes, his brakes were defective or his tires slick so he could not stop.

Defendant's answer makes a general denial of all the allegations of the complaint, except it admits the residence of the parties, and except as admitted in the further answer and defense.

This is a summary of the relevant allegations of fact of defendant's further answer and defense:

About two miles east of Rocky Mount, N. C. Highway 43 curves to the right. On the night of 3 October 1960 defendant was driving a Chevrolet automobile, belonging to a lady he subsequently married, at a lawful speed east on this highway. When he rounded the curve, he saw an automobile in the ditch on the south side of the highway, and a person standing on the paved part of the highway ahead of him waving a signal light. Because of this waving signal light he started to slow down and turn off the highway onto the south shoulder. A Studebaker was parked on the south shoulder headed west without lights. By reason of the waving signal light, he was unable to see the Studebaker until he turned off onto the south shoulder almost at the point it was parked.

Plaintiff's husband, Joseph Z. Bulluck, in waving the signal light, so as to cause defendant or other motorist traveling east reasonably to believe that there was great danger ahead, created a dangerous situation, which plaintiff's husband knew, or in the exercise of due care should have known, would cause defendant or any other motorist traveling east to turn off the paved part of the highway onto the south shoulder where he, Joseph Z. Bulluck, had parked his Studebaker without lights, and such negligence on the part of plaintiff's husband was the proximate cause of plaintiff's injuries. Plaintiff in driving her husband's Mercury onto the left shoulder and stopping it behind the Studebaker under her husband's direction, when she knew the Studebaker because of weak batteries had no lights and no flares to show its position, and when she knew the Studebaker would obscure the lights of the Mercury, was guilty of contributory negligence, which is pleaded as a defense. If defendant was guilty of negligence proximately causing plaintiff's injuries, which he denies, then plaintiff's husband's negligence was also a proximate cause of plaintiff's injuries operating jointly to cause her injuries, and defendant has a right to have Joseph Z. Bulluck's liability determined in this action. If defendant was negligent, which he denies, the negligent act of plaintiff's husband in waving the signal light was imputable to plaintiff, because plaintiff and her husband were engaged in a joint enterprise in pushing off the Studebaker, and this constituted contributory negligence on plaintiff's part, which is pleaded as a defense.

And further answering the complaint defendant alleges that Joseph Z. Bulluck was guilty of negligence in waving the signal light on the paved part of the highway when he had parked his Studebaker on the south shoulder without lights and plaintiff was guilty of parking the Mercury behind the Studebaker so it would obscure its lights, and as a result of their concurring negligence he drove off the highway onto the south shoulder crashing into the Studebaker. As a result thereof he sustained severe injuries. Whereupon, he prayed that Joseph Z. Bulluck be made a party defendant, and that he recover damages from them for his injuries.

Whereupon, by order of court Joseph Z. Bulluck was made a party defendant, and was served with process. ·

Then Joseph Z. Bulluck, by his attorneys, Battle, Winslow, Merrell, Scott and Wiley, filed a motion to strike and a demurrer to the answer, further answer and defense, and counterclaim, and to the order making him an additional defendant, and specified his grounds for the demurrer. Then plaintiff made a motion to strike certain portions of the further answer and defense, and demurred to the alleged counterclaim against her.

Judge Copeland at the September 1961 Civil Term denied Joseph Z. Bulluck's motion to strike in its entirety and overruled his demurrer to the counterclaim of the original defendant, and Joseph Z. Bulluck excepted and appealed. Judge Copeland at the same term entered a similar order as to plaintiff's motion to strike and demurrer.

Plaintiff filed a reply to the original defendant's further answer and defense and counterclaim denying that she was negligent.

Joseph Z. Bulluck filed an answer denying practically all of the original defendant's further answer and defense and counterclaim. His answer contains what he calls a second further answer to the counterclaim of the original defendant, in which he alleges the original defendant was guilty of negligence in the same language as alleged in the complaint, and that if he was guilty of negligence, which he denies, then the original defendant was guilty of contributory negligence, which he pleads as a defense. Then he further alleges that the original defendant was guilty of negligence in the operation of his automobile in the same language as used in the complaint, that the Studebaker and the Mercury were owned by him, and the original defendant's negligence proximately caused damages to his two automobiles in the amount of $922.00, and caused him to lose time from his work and incur traveling expenses to procure medical treatment for his wife in the sum of $316.43, and he prays that he recover these amounts from the original defendant.

This is a summary of plaintiff's evidence.

A state highway, with pavement 20 feet wide, runs between the towns of Rocky Mount and Pinetops. About 11:45 o'clock p. m. on 3 October 1960 Joseph Z. Bulluck, husband of plaintiff, was driving his Studebaker automobile on this highway from Rocky Mount in the direction of Pinetops, following an automobile which had forced him, to avoid a collision, off the street onto the sidewalk in Rocky Mount. About two miles from Rocky Mount the automobile in front turned off into a driveway, and its lights were turned off. Bulluck passed by, and at the next driveway he turned around and started back in the direction of Rocky Mount. The automobile he was following backed toward the highway and into a ditch on the south side of the highway. Bulluck turned his automobile to the left, and parked 34 inches from the highway on the dirt south shoulder of the highway near the automobile in the ditch, which was between him and Rocky Mount. He went to the automobile in the ditch, and found in it one Millard, who was drunk. Bulluck got Millard in his, Bulluck's, automobile, but he could not start it because his battery had failed. Bulluck went across the highway to a house, and telephoned plaintiff, his wife, who arrived at the scene in ten minutes driving his Mercury automobile. Pursuant

to his directions plaintiff drove the Mercury automobile onto the south shoulder of the highway about 34 inches from the pavement of the highway, and parked it directly behind his Studebaker so as to be in a position to push it off. After Bulluck had "lined up" his wife behind for pushing and given her instructions how to push, he started to the left door of the Studebaker. He looked east toward Pinetops, and saw a tractor-trailer coming around a curve. He looked west toward Rocky Mount, and saw defendant Herbert Long's automobile approaching about 300 yards away. It was a bad night and raining hard. The lights of the Mercury were shining directly into the rear of the Studebaker, and were not reflected on the highway.

Bulluck walked directly in front of his Studebaker on the south shoulder, and began waving crossways a railroad signal lantern that gave a white light. Long passed the tractor-trailer about 30 feet west of where the Studebaker was parked, and as Long passed the tractor-trailer, he drove his automobile off the pavement of the highway onto the south dirt shoulder and into the front of the Studebaker—"the right front of each car, headlight to headlight." Long came around a curve about 55 miles an hour. Bulluck "was back-tracking up the path" when the collision occurred, and was about four feet away at the moment of the collision. In the collision the Mercury was pushed back about 30 feet, and as a result plaintiff sustained personal injuries. The collision occurred in the open country, where the speed limit is 60 miles per hour.

Later that night in a hospital defendant Long told a highway patrolman he was traveling east from Rocky Mount at a speed of about 55 miles an hour, that he saw something in the road, lights, and thinking there had been a bad accident in the road, he slowed down, started skidding, and went off onto the shoulder on his right, and he was somewhere in the vicinity of about 100 feet of where the collision occurred when he noticed some danger.

Joseph Z. Bulluck testified that he heard defendant Long say, "he did not see my car and that I was waving a lantern and that he did not apply his brakes to stop."

Mrs. Jean Bulluck saw defendant Long that night when he was carried from an elevator to the emergency room of a hospital. He was real bloody, and she could smell beer or whisky or something strong.

This is a summary of defendant Long's evidence, which consists of his testimony alone.

About 11:30 or 11:40 o'clock p.m. he was driving a Chevrolet automobile, belonging to a woman he subsequently married, on the Rocky Mount-Pinetops highway about two miles east of Rocky Mount. It was raining and dark. He was driving about 50 miles an hour.

He testified:

"On that night I had gotten off work late and was coming home at about 11:30 when I rounded the curve and I did not see any cars anywhere and then I saw a flash of light in the road. I met some lights from a—Bulluck has said it was a tractor-trailer truck—I do not know, I could not tell, and somebody standing in the road waving a light, and I saw out of the edge of my headlights the Nash automobile that was in the ditch and then somebody waving a light up there, and I thought there had been an accident in the highway, so I put my foot on the brakes and started to slow down and pull over to the right side of the road. I pulled over and I hit something, I did not know what it was until I woke up in the hospital that morning about 4 o'clock and asked the nurse what had happened. I did not see any cars other than the Nash Rambler I testified to seeing in the ditch."

On that night he had drunk two cans of beer, one about 7:00 o'clock and another about 9:00 o'clock. In his opinion he was traveling about 35 to 40 miles an hour at the moment of impact. The pavement was wet and he didn't want to skid out of control, so he "eased" on his brake pedal, and "eased" to the right. There is very little stretch of road after you come out of the curve before you reach the scene of the collision. He did not know there is as much as 150 yards.

At the close of all the evidence the trial court sustained the motion of plaintiff and the defendant Joseph Z. Bulluck for a judgment of involuntary nonsuit as to the cross action and counterclaim filed against them by defendant Long, and entered judgment to that effect, which is incorporated in the one judgment the court rendered.

Then the judgment contains this language:

"Upon the sustaining of the motion of nonsuit as to the counterclaim and cross action of the defendant Herbert Long, the defendant Herbert Long moved that the counterclaim of the Third Party Defendant Joseph Z. Bulluck be dismissed and the Court being of the opinion that the motion of the Third Party Defendant for judgment of nonsuit of the original defendant's counterclaim and cross action was tantamount to a voluntary nonsuit on the part of the Third Party Defendant, Joseph Z. Bulluck, to his own counterclaim;

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the counterclaim of Joseph Z. Bulluck, third party defendant, against Herbert Long, original defendant, be, and

it is hereby dismissed as in case of a voluntary nonsuit, without prejudice."

Two issues were submitted to the jury: One, was the plaintiff injured by the negligence of the defendant Herbert Long, as alleged in the complaint? Two, what amount, if any, is the plaintiff entitled to recover? The jury answered the first issue No, and did not get to the second issue. Whereupon, the court entered one judgment, incorporating in it what is set forth in the two preceding paragraphs, and decreeing that plaintiff recover nothing of the defendant Herbert Long, and that she be taxed with the costs.

From this judgment plaintiff appealed to the Supreme Court.

From that part of the judgment allowing the motion of plaintiff and the defendant Joseph Z. Bulluck for judgment of involuntary nonsuit as to the cross action and counterclaim of defendant Long against them, defendant Long appealed to the Supreme Court.

The record contains no assignments of error on the part of defendant Long. Defendant Long served no statement of case on appeal on plaintiff and defendant Joseph Z. Bulluck. Defendant Long's brief is signed as brief for the appellee, has no reference as to any appeal by him, and ends with this language:

"Appellee maintains that the lower Court did not err in the conduct of the trial of this cause. The verdict speaks the truth in this case. The jury was present to hear all of the evidence, weighed it carefully, and found for the defendant. The appellee prays the Court that the judgment of the lower Court be affirmed."

Under those circumstances counsel in the trial court for defendant Joseph Z. Bulluck have filed no brief in this Court.

*Spruill, Thorp, Trotter & Briggs and Charles T. Lane for plaintiff Gertrude Bulluck, appellant.*

*Fountain, Fountain, Bridgers & Horton and George M. Britt for defendant Herbert Long, appellee.*

PARKER, J.   All of the thirteen assignments of error by the appellant Gertrude Bulluck, except two formal ones, relate to the court's charge to the jury. The eleven assignments of error to the charge are that the trial judge failed in his duty, as required by G.S. 1-180, to relate and apply the law to the variant factual situations having support in the evidence, and they specify wherein they aver these eleven assignments of error fail to comply with the duty imposed on the judge by G.S. 1-180. For instance, the judge failed to charge that a violation of the

provisions of G.S. 20-141 would constitute negligence *per se,* and failed to state facts, which if found by the jury from the evidence would constitute a basis for finding the defendant Long guilty of negligence in violating the provisions of the statute; and further that the judge failed to comply with the provisions of G.S. 1-180 in stating in detail the facts which would constitute a basis for finding that defendant Long was faced with a sudden emergency and was entitled to the benefit of that doctrine, but neglected to state to the jury facts which would constitute a basis for their finding that defendant Long was not entitled to the benefit of that doctrine; and further that in respect to plaintiff's other allegations of negligence and evidence offered by her in respect thereto, which are specified in the assignments of error, the judge failed to declare and explain the law arising on the evidence in the case, and to explain the application of the law thereto.

The parties waived a recapitulation of the evidence by the court, and the jury was so informed. But, "such waiver did not relieve the court of the duty to declare and explain the law arising on the evidence of the respective parties." *Brannon v. Ellis,* 240 N.C. 81, 81 S.E. 2d 196.

Upon the first issue—was the plaintiff injured by the negligence of the defendant Herbert Long, as alleged in the complaint—the trial judge correctly stated the law as to the burden of proof, and gave a general definition of the constituent elements of actionable negligence. He then stated "one act of negligence that the plaintiff complains of is that the defendant was operating his motor vehicle at the time and place in question, it being somewhere around midnight, you will remember the exact time, at a speed greater than that which was reasonable and prudent under the circumstances." He then repeated or read the provisions of G.S. 20-141(a) and (c), but he did not instruct the jury that a violation of these parts of the statute, or of either of them, constituted negligence *per se, Cassetta v. Compton,* 256 N.C. 71, 123 S.E. 2d 222, though he did say if one drove at a speed greater than is reasonable and prudent under the existing circumstances, he violated the speed statute. He then briefly stated the contentions of plaintiff and defendant Long as to these provisions of the statute, and immediately thereafter charged as follows: "As to whether the speed that the defendant was driving at that time and place was in excess of the speed which was reasonable and prudent under those conditions is for you to determine, remembering that the burden of proof is upon the plaintiff to satisfy you as to this particular complained act of negligence, that the defendant was negligent in that particular and that such negligence was the proximate cause of the defendant's car

striking the Studebaker of the plaintiff's husband on the shoulder of the highway and knocking it into the car in which she was sitting."

The judge then charged as to the duty of a motorist to keep a proper lookout, and a failure to do so is negligence. And then charged that a person driving an automobile is required to keep it under proper control, and if he fails to do so he is guilty of negligence; and then "the third allegation of negligence is that the plaintiff (sic) failed to remain on the hard surface and pulled off onto the dirt shoulder when he saw or, in the exercise of reasonable care, should have seen the two cars and the signal light on the shoulder of the road, and that he also failed to put on brakes and reduce his speed sufficiently to avoid striking the plaintiff after he saw or should have seen the warning light. So you see that these, the third and fourth allegations, have to do with this second one of reasonable lookout and keeping his automobile under proper control." He then stated contentions of the plaintiff and defendant Long in respect to the duty to keep a proper lookout and to keep an automobile under proper control. He next charged, "But, it is for you to determine under the evidence, weighing the evidence carefully and the contentions of both sides carefully, whether under the situation that existed there the defendant was keeping a proper lookout, whether under those conditions he used reasonable care in seeing the cars on the highway and the signal light, and whether he failed to put on brakes and reduce his speed sufficiently to avoid striking the cars on the shoulder of the road, taking into consideration all the facts and circumstances in the case." He then charged "the failure to use brakes when such would have prevented a collision is negligence." He next charged: "Now, these are the particular acts of negligence of which the plaintiff contends, and it is for you to find from the evidence whether the defendant was guilty of one or more of these acts of negligence complained of by the plaintiff, remembering that the burden is upon the plaintiff to satisfy you by the greater weight of the evidence that the defendant was negligent in one or more of these particulars, and that the burden is on the plaintiff further to satisfy you, if you do find by the greater weight of the evidence that the defendant was negligent in one or more of these particulars, you must further find by the greater weight of the evidence that such negligence was the proximate cause of the injury to the plaintiff, as that term has been defined to you."

He then charged the defendant contends he was faced with a sudden emergency with the light being waved before him, and under the circumstances then existing he did what any reasonable man faced with like circumstances would have done, and that he was not negligent. He then gave a special prayer for instructions of defendant Long as

to sudden emergency, charged the doctrine of sudden emergency, and charged at length defendant Long's contentions in respect thereto to the effect he was faced with a sudden emergency and was entitled to the benefit of this doctrine. However, the judge gave no contentions of plaintiff in respect to this doctrine.

He then charged again as to burden of proof, the doctrine of sudden emergency, and stated there is no statute or law which prohibits the parking of an automobile on the left shoulder of a highway completely off the traveled portion. He next charged defendant was under a duty to ascertain his position on the highway and to know where he was, irrespective of any assumption he might have had as to where another automobile was, and instructed the jury where a motorist is unable to see ahead of him, it is his duty to reduce his speed in accord with his ability to see, and it is his duty to stop if necessary.

He concluded his charge on the first issue in these words: "Now, gentlemen, summarizing with respect to that issue, if you find from the evidence and by its greater weight that the defendant was negligent in one or more of the particulars alleged, and that such negligence was the proximate cause of the plaintiff's injuries, then it would be your duty to answer the first issue Yes. If you fail to so find, then it would be your duty to answer that issue No."

In respect to the defendant Long's alleged violation of the provisions of G.S. 20-141(a) and (c), the trial judge did not charge the jury that a violation of these parts of the statute, or either of them, was negligence *per se,* and his charge contains no formula or rule to aid the jury in determining which of the circumstances in respect thereto would or would not constitute negligence. The judge simply charged in respect to these provisions of the statute as to the plaintiff's contention that certain facts would make the speed at which defendant was driving his automobile in excess of what was reasonable and prudent under the circumstances then existing, and the defendant's contention that other facts would not, and that it was for the jury to determine whether the defendant was driving at that time and place at a speed in excess of what was reasonable and prudent under the conditions; but without appropriate instructions how could the jury know whether the facts as found did or did not amount to negligence as defined by the statute.

In respect to the part of the charge as to a sudden emergency, the judge stated the defendant contends he was faced with a sudden emergency with the light being waved before him, gave a special prayer for instructions of defendant Long as to sudden emergency, stated the doctrine of sudden emergency, and charged at length defendant Long's contentions in respect thereto, and his contention that he was entitled to the benefit of this doctrine. The judge gave no contention of plain-

tiff in respect to this doctrine, and did not declare and explain the law arising upon plaintiff's evidence in respect to this doctrine.

A reading of the charge as a whole leads us to the conclusion that the judge did not declare, explain, and apply the law to the evidence bearing on the substantial and essential features of the case.

The provisions of G.S. 1-180 require that the trial judge in his charge to the jury "shall declare and explain the law arising on the evidence given in the case," and unless this mandatory provision of the statute is observed "there can be no assurance that the verdict represents a finding by the jury under the law and on the evidence presented." *Smith v. Kappas,* 219 N.C. 850, 15 S.E. 2d 375. A bare declaration of the law in general terms and a statement of the contentions of the parties are not sufficient to meet the statutory requirement. *Glenn v. Raleigh,* 246 N.C. 469, 98 S.E. 2d 913; *Hawkins v. Simpson,* 237 N.C. 155, 74 S.E. 2d 331, where 14 of our cases to that effect are cited.

This Court said in *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484: "The judge must declare and explain the law 'as it relates to the various aspects of the testimony offered.' *Smith v. Kappas, supra.* By this it is meant that the statute requires the judge 'to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved.' 53 Am. Jur., Trial, section 509."

The chief purpose of a charge is to aid the jury to understand clearly the case and arrive at a correct verdict. For this reason, the Court has consistently held that G.S. 1-180 confers a substantial legal right, and imposes upon the trial judge a positive duty, and his failure to charge the law on the substantial features of the case arising on the evidence is prejudicial error, and this is true even without prayer for special instructions. *Westmoreland v. Gregory,* 255 N.C. 172, 120 S.E. 2d 523; *Lewis v. Watson, supra; Smith v. Kappas, supra.* In the charge here most of the evidence was stated in the contentions of the parties. Where no evidence is stated except in the contentions of the parties that does not meet the requirements of G.S. 1-180. *Brannon v. Ellis, supra,* and the cases there cited.

When the charge given to the jury in the court below is scrutinized in the light of these principles, it is indisputably clear that the trial judge failed to declare and explain the law arising upon the evidence given in this case, and that the plaintiff is entitled to a new trial of her action against defendant Long, and it is so ordered.

New trial for plaintiff.

SHARP, J., took no part in the consideration or decision of this case.